REILLY, P.J. (dissenting).
¶ 68 I respectfully dissent. As noted by the majority, the police were of the initial impression that a "white guy" was the second robber at the 7-Eleven robbery. Majority, ¶ 27. It is easy to see why police thought the second robber was white as the raw surveillance footage of the 7-Eleven robbery-never included in Exhibit 11 and never shown to the jury-clearly shows the second robber's white hand:
Tabular or graphic material set at this point is not displayable.
Malone is a black man.
¶ 69 Trial counsel's strategy and the "key component" of his defense of Malone was that the second robber at the 7-Eleven robbery was white. Trial counsel either did not watch the raw surveillance video or, at a minimum, was not attentive when watching as he did not take note of the second robber's white hand.[1] Trial counsel apparently gave attention only to Exhibit 11, the State's "montage" video of the 7-Eleven robbery, which had the "white hand" portion of the raw footage extracted. On cross-examination, trial counsel only asked the police detective about the skin that was visible along the bridge of the nose and the eyes of the second robber: "[W]ould it be a fair statement to say that that person has a Caucasian complexion in that photograph?" The detective responded, "I wouldn't make any determination of race on that picture."[2] Trial counsel admitted at the Machner hearing that he had no strategic reason for not utilizing the raw surveillance video showing the second robber to be white and that presenting the video clip to the jury would have been beneficial to Malone's defense.
¶ 70 Trial counsel's failure is compounded by the State's questionable creation of the "montage" video. A "montage" is "a style of film editing in which contrasting shots or sequences are juxtaposed for the purpose of suggesting a total idea or impression." Majority, ¶ 7 n.5 (emphasis added). Despite the entire robbery at 7-Eleven being approximately one minute and twenty seconds in length, the detective, obviously to suggest an idea or impression , edited out the approximately ten seconds which showed the second robber to be a white guy. The extraction of ten seconds of key video footage removed a materially exculpatory piece of evidence.
¶ 71 I acknowledge that the State did not withhold the raw surveillance footage from trial counsel and therefore did not withhold exculpatory evidence. I acknowledge that actionable fault lies with Malone's trial counsel. But due process and fundamental justice requires the government to act with integrity and defense counsel to act proficiently-neither of which occurred.[3]
¶ 72 The majority agrees that the issue at trial "was whether Malone was the second robber." Majority, ¶ 7. The State asked the circuit court to allow the 7-Eleven surveillance video as other acts evidence as it was "highly relevant" as it "help[s] us establish ... who did it," i.e., identity. Malone's defense was identity: he was not the second robber at 7-Eleven or Citgo. Remarkably, the majority dismisses "identity" as an appeal issue on the grounds that all the State needed to show was "plan [or] intent" in order to allow the other acts evidence to come in. Majority, ¶ 3 n.2. The majority errs in dismissing "identity" as it was the central reason for the State's proffer of other acts evidence and identity was Malone's central defense at trial.
¶ 73 To the majority's credit, they agree that the "montage" video (Exhibit 11) showed enough of the robber-bridge of nose and eyes-that "a reasonable jury could conclude from that glimpse that the second robber may have been Caucasian." Majority, ¶ 45. The majority remarkably concludes, however, that the skin between the eyes of the robber was not "so conclusive as to completely negate the testimony of Thomas and Cotton that the second robber in the 7-Eleven robbery was Malone." Majority, ¶ 45. The jury, as the ultimate fact finder, was clearly intrigued by Exhibit 11 as it asked for an "up close" view of the Exhibit 11 video during deliberations. The majority ignores the question of what effect the removed ten seconds would have had on the jury if it had been shown the "white guy" from the raw surveillance video.
¶ 74 The State has no forensic evidence linking Malone to either the 7-Eleven robbery or the Citgo murder/robbery. The State's case has its foundation in the testimony of an admitted killer (Thomas) and his side-kick, get-away driver (Cotton), both of whom admitted to lying at various times as to who was involved in the robberies/shootings. Majority, ¶¶ 20, 24, 26. Thomas was told by police that if he cooperated in giving testimony against Malone he "could get as little as 20 years," otherwise he was getting a life sentence for first-degree homicide. Majority, ¶ 26. Cotton was told that in return for her testimony against Malone, her charge of felony murder would be amended to armed robbery with a recommendation of no more than ten years of confinement. Majority, ¶ 19.
¶ 75 The State acknowledged in its other acts motion that unfair prejudice occurs when "the proffered evidence has a tendency to influence the outcome by improper means." See State v. Sullivan , 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998). When the police removed the racial identity of the second robber, the State utilized improper means to influence the outcome. What can be more prejudicial than having exculpatory evidence as to identity withheld from a jury? It was the jury's job to determine if the second robber was Malone based upon all the relevant facts placed before it. Not having the evidence from the raw surveillance video that the second robber was a "white guy," the jury was without material exculpatory evidence. Setting blame aside, the criminal justice system failed and Malone is entitled to a new trial on the grounds of ineffective assistance of counsel as well as in the interest of justice.

Defense counsel testified at the Machner hearing that he "believed that he reviewed all of the surveillance videos of the 7-Eleven robbery prior to the State's motion to admit other acts evidence." (Emphasis added.) See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Interestingly, this answer came from the same detective who received the raw surveillance footage and created the Exhibit 11 "montage" removing the footage of the white hand.

Based on a review of the record, we do not know if the prosecutor was, like trial counsel, unaware that a portion of the raw video showing the second robber to be white had been removed by the police.